UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| DELPHON INDUSTRIES, LLC, | ) | Case No.: 11-CV-1338-PSG |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING MOTION FOR A** |
| v. | ) | **PRELIMINARY INJUNCTION** |
| | ) | |
| INTERNATIONAL TEST SOLUTIONS INC., ET AL., | ) | **(Re: Docket No. 131)** |
| | ) | |
| Defendants. | ) | |

Defendant and Counterclaimant International Test Solutions, Inc., a Nevada Corporation, Inc. ("ITS Nevada"), Defendant Alan Eugene Humphrey ("Humphrey"), and Defendant Billie Joyce Adams ("Adams") move for a preliminary injunction order against Plaintiff and Counter-Defendant Delphon Industries, LLC ("Delphon" or "Gel-Pak"), and Counter-Defendants Jeanne Beacham ("Beacham"), Darby Davis ("Davis"), Sancho Adam, Jr., and Complete Probe Solutions ("CPS"). On July 13, 2011, the court heard oral argument as well as live testimony from three witnesses. After considering the parties' briefing and arguments, as well as the witness testimony presented, the court is not persuaded that a preliminary injunction is warranted. For the reasons discussed below, the motion for a preliminary injunction is DENIED.

1

Case No.: 5:11-CV-01338
ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION

# I. BACKGROUND

A. FACTUAL HISTORY

On October 22, 1999, Defendant International Test Solutions, Inc., a California Corporation, Inc. ("ITS California") and Delphon's predecessor-in-interest Gel-Pak LLC ("Gel-Pak") entered into a distribution agreement that Gel-Pak would supply probe card cleaning materials for ITS California to distribute.[1] Under this agreement, Gel-Pak could not solicit orders in the probe card cleaning market while the agreement was in place, and could not market to ITS California's customers for three years after the termination of the agreement. Under Section 7.2 of the distribution agreement, any intellectual property developed under the agreement in the course of developing new products would be jointly owned by ITS California and Gel-Pak. Under Section 9 of the agreement, the agreement would remain in effect until terminated with one hundred and eighty days' notice by either party.

At the end of 2003, ITS California ceased operations and transferred its assets to ITS Nevada.[2] On January 30, 2009, James Bly ("Bly"), Chief Financial Officer for Delphon, sent a letter to ITS California at one of its Nevada addresses requesting an accounting of sales of products sold.[3] On March 6, 2009, Bly received a response from the law firm of Holland & Hart.[4] The letter states, "the Reno corporation to which you sent your letter is not a party to the Distribution Agreement. The 'International Test Solutions' party to the Distribution Agreement is a California Corporation. That entity has not been operations for years, is dissolved, and was and is not related to the Nevada 'International Test Solutions' to which you sent your letter. For example the Nevada International Test Solutions did not merge with the California International Test Solutions."[5]

---

[1] See Motion Ex. 10 (Docket No. 101-5).

[2] See 7/13/11 Transcript (Docket No. 134) at 41:16-21, 60:10-13.

[3] 7/11/11 Decl. of James Bly in Supp. of Delphon's Opp'n (Docket No. 112-1) ¶ 2.

[4] See id. Ex. B. (Docket No. 112-1).

[5] Id.

On March 21, 2011, Delphon filed the Complaint initiating this lawsuit against ITS Nevada, ITS California, Humphrey, and Adams.[6] Delphon alleges, among other claims, that Defendants breached the distribution agreement. On March 31, 2011, Delphon began to sell probe card tip cleaning materials through CPS as its distributor.

**B. PROCEDURAL HISTORY**

On May 5, 2011, ITS Nevada filed a motion for a temporary restraining order against Delphon.[7] On May 9, 2011, the court denied that motion because Defendants had not filed a counterclaim or other pleading to serve as the basis of the requested injunction.[8] On May 9, 2011, ITS Nevada filed its counter-complaint and a second motion for a temporary restraining order.[9] On May 10, 2011, the court denied ITS's second motion for a temporary restraining order, finding that ITS Nevada had failed to establish it is likely to suffer irreparable harm.[10]

Also on May 10, 2011, the court set the hearing on ITS Nevada's motion for preliminary injunction for May 31, 2011. Pursuant to the parties' subsequent stipulation and June 16, 2011 telephone conference, the court rescheduled the hearing to take place on July 13, 2011, ordered the moving papers be filed no later than July 1, 2011, and ordered the opposition papers to be filed no later than July 8, 2011.[11]

On May 27, 2011, ITS Nevada filed the operative counter-complaint, its Second Amended Counter-Complaint, against Delphon; CPS; Delphon's Vice President of Sales and Marketing, Davis; Delphon's President, Beacham; and CPS' Senior Director of Customer Operations, Sancho Adam, Jr., claiming (1) false designation of origin, false advertising in violation of the Lanham Act, (2) trademark infringement, (3) tortious interference with business relationship, (4) trade libel,

---

[6] *See* Docket No. 1.

[7] *See* Docket No. 11.

[8] *See* Docket No. 31.

[9] *See* Docket Nos. 32, 33.

[10] *See* Docket No. 45.

[11] *See* Docket No. 85.

1  (5) violation of Cal. Bus. & Prof. Code § 17200, et seq., (6) copyright infringement, (7) violation of
2  the California Uniform Trade Secrets Act, and (8) breach of contract.[12]
3  On July 1, 2011, ITS Nevada filed a 49-page motion for preliminary injunction,[13] which
4  exceeded the page-limit set by Civil L.R. 7-2(b) by 24 pages. On July 6, 2011, the court ordered
5  ITS Nevada to file a revised motion.[14] On July 7, 2011, ITS Nevada, Humphrey, and Adams
6  (collectively "movants") filed the revised motion for a preliminary injunction against Delphon,
7  Beacham, Davis, Adam, and CPS (collectively "Counter-Defendants"),[15] which is currently before
8  the court.[16] On July 6, 2011 and July 9, 2011, Movants requested leave to file supplemental
9  exhibits,[17] which they did not cite in their motion. On July 11, 2011, Counter-Defendants filed
10 their opposition to the motion for a preliminary injunction.[18] The court permitted Counter-
11 Defendants to file a 2-page supplemental opposition in order to respond to movants' late-filed
12 supplemental exhibits; Counter-Defendants filed their supplemental opposition on July 12, 2011.[19]
13 On July 13, 2011, the court heard oral argument and live testimony from ITS Nevada's witnesses

---

[12] *See* Docket No. 56.

[13] This motion was not filed electronically because ITS Nevada moved to file it under seal. *See* First Administrative Motion To File Under Seal (Docket No. 93); Administrative Motion To Exceed Page Limits (Docket No. 94).

[14] *See* Docket No. 96.

[15] *See* Docket Nos. 131, 131-1.

[16] Movants also filed a Request for Judicial Notice of two declarations that Counter-Defendants submitted in support of their opposition to the motion for a temporary restraining order. *See* Docket No. 99. Because these declarations were filed in this case, the declarations are already part of this court's docket. Thus, the court need not take judicial notice of the fact they were filed in this case, and the Request for Judicial Notice is DENIED.

[17] *See* Docket Nos. 95, 106.

[18] *See* Docket No. 112.

[19] *See* Docket No. 115. Also on July 12, 2011, the day before the hearing, movants requested leave to again file a set of supplemental exhibits. *See* Docket No. 114. The court deems this request as a motion for leave to file additional exhibits after the deadline. The motion makes no argument and offers no explanation as to why these exhibits could not have been submitted to the court earlier than the day before the hearing. ITS Nevada's motion for leave to file additional exhibits after the deadline therefore is DENIED.

Jerry Broz ("Broz") and Humphrey and Delphon's witness Davis. On August 17, 2011, the transcript of the proceedings was made available.[20]

## II. LEGAL STANDARDS

The issuance of a preliminary injunction is committed to the discretion of the district court.[21] A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[22] "The proper legal standard for preliminary injunctive relief requires a party to demonstrate [1] 'that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'"[23] Following *Winter*, the Ninth Circuit made clear that "to the extent [its] cases have suggested a lesser standard, they are no longer controlling, or even viable."[24]

## III. DISCUSSION

### A. STANDING

"Only after an action has been commenced can preliminary injunctive relief be obtained. An action is commenced in federal court by the filing with the court of a complaint."[25] As explained in this court's May 9, 2011 Order Denying Motion for a Temporary Restraining Order, a party cannot obtain injunctive relief before it has filed a complaint.[26] Humphrey and Adams have not filed a complaint (in the form of an answer and counterclaim, or countercomplaint, or otherwise). As a result, Humphrey and Adams have no standing to bring this motion. Humphrey

---

[20] *See* Docket No. 134.

[21] *See Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 651 (9th Cir. 2009).

[22] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

[23] *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

[24] *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

[25] *Stewart v. Immigration Naturalization Service*, 762 F.2d 193, 198 (2nd Cir. 1985) (internal citation omitted).

[26] *See* Docket No. 31 at 1:21-22 (citing *id.*).

5
Case No.: 5:11-CV-01338
ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION

and Adams' requests for a preliminary injunction therefore are DENIED.  ITS Nevada is the only party that has standing to bring this motion.

**B. IRREPARABLE HARM**

"Courts have consistently identified a showing of likely irreparable harm as the single most important prerequisite for the issuance of a preliminary injunction; Plaintiff must make that showing before the other requirement for the issuance of a preliminary injunction need even be considered."[27] Even if a plaintiff establishes a likelihood of success on the merits, "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper."[28] The court therefore will begin its analysis with an analysis of ITS Nevada's showing of irreparable harm.

A plaintiff must demonstrate that irreparable harm is real and significant, not speculative or remote.[29] He must also establish that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury."[30] Harm is irreparable when it cannot be remedied except through injunctive relief.[31] Economic damages are not traditionally considered irreparable because

---

[27] *Inspection Management Systems, Inc v. Open Door Inspections, Inc.*, No. 2:09-cv-00023-MCE-GGH, 2009 WL 805813, at *3 (E.D. Cal., Mar. 26, 2009) (citing *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260-61 (10th Cir. 2004)); *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) ("At a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that it will be exposed to irreparable harm.  Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A [movant] must do more than merely allege imminent harm sufficient to establish standing; a [movant] must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief").

[28] *Siegel v. Le Pore*, 234 F.3d 1163, 1176 (11th Cir. 2000); *see also Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233–34 (2d Cir. 1999) ("the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.").

[29] *See Winter*, 555 U.S. at 22.

[30] *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006).

[31] *See Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd*., 518 F.Supp.2d 1197, 1210 (C.D. Cal. 2007).

6
Case No.: 5:11-CV-01338
ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION

the injury can later be remedied by a damage award.[32] As the Supreme Court explained in *Sampson v. Murray*, "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury. . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."[33]

While ITS Nevada has presented evidence that Delphon's partnership with CPS to sell probe tip cleaning supplies might lead to lost sales and price diminution,[34] under *Sampson* and the Ninth Circuit cases that have followed, monetary injury due to lost revenues is not normally considered irreparable damage for purpose of preliminary injunction.[35] Although ITS Nevada argues that this monetary loss will be difficult to quantify, ITS Nevada has not provided any evidence showing that the quantification of this loss is more complicated than simply accounting for the drop in prices negotiated by clients or the orders that would have been made at regular intervals to ITS Nevada[36] but were instead placed with Delphon.

ITS Nevada also argues that it will suffer the loss of goodwill and reputation because customers will be confused about the relationship between Delphon's products, which ITS Nevada argues are inferior, and ITS Nevada's products, which it argues is are higher quality. ITS Nevada's most persuasive evidence in support of its argument is as follows:

- Humphrey represents that, in May 2011, a customer, HTT, told Humphrey that the customer had been contacted by Sancho Adam, Sr. of CPS on behalf of Gel-Pack and was told "that Gel-Pak is the original manufacturer of all of ITS' products . . . and ITS is just buying these

---

[32] *Cal. Pharmacists Ass'n v. Maxwell–Jolly*, 563 F.3d 847, 852 (9th Cir. 2009).

[33] 415 U.S. 61, 90 (1974).

[34] According to Humphrey, ITS Nevada has had to reduce its prices and testified in detail to the negotiations in which it substantially reduced its price to keep one customer. *See* Docket No. 134 at 48, 52.

[35] *See Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980).

[36] *See* Decl. of Alan Eugene Humphrey in Supp. of Preliminary Injunction Mot. (Docket No. 131-4) ¶ 50.

7
Case No.: 5:11-CV-01338
ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION

products from Delphon, doing sales and marketing for Delphon and then charging HTT a premium for those products."[37] This customer refused to sign a declaration.[38]

- Humphrey also represents that another customer, MJC, also told him that, in June 2011, Davis had told MJC that "Gel-Pack made the original manufacturer for [ITS]."[39] According to Humphrey, this customer refused to sign a declaration.[40]

- Broz, Vice President of Applications for ITS Nevada, represents that, in 2010, ITS Nevada received a cleaning wafer labeled with the 7003 SCM and 9903 SCM marks[41] from a customer who stated the wafer had been obtained from Gel-Pak and was confused over whether the wafer was from ITS or from Gel-Pack.

- An employee of one company that uses cleaning material made by ITS Nevada submitted a declaration ("Customer Declaration") that, in November 2010, Davis told him Gel-Pak was the manufacturer of all the material that ITS sells.[42]

In rebuttal, Delphon offers Davis's representation that "[s]ince entering the probe cleaning market directly in or about 2010," he has "never told any person that Delphon was the current manufacturer of any products for ITS, or words to that effect; and I have never said to any person that Delphon manufactures products identical to ITS. In [his] marketing and sales efforts, [he has] been very careful to state only that Delphon is the original manufacturer of Gel-Pack Film, Delphon used to make products for ITS years ago, and Delphon can make products today to satisfy the customer's requirements."[43]

Additionally, Davis represented that, although Delphon provided product samples with the 7003 and 9903 part number designations to a few customers, Delphon has stopped that practice and

---

[37] *Id.* ¶ 46-47.

[38] *See* Docket No. 134 at 57:10-14.

[39] *See id.* ¶ 35.

[40] *See* Docket No. 131-4 ¶ 35.

[41] *See* Decl. of Jerry Broz, Ph.D. in Supp. of Preliminary Injunction Mot. (Docket No. 100) ¶ 6; Mot. Ex. 36 (Docket No. 101-13) (showing label of wafer marked Gel-Pak and containing "9903" in the part number).

[42] Customer Declaration in Support of Motion (Docket No. 131-5) ¶ 4.

[43] Decl. of Darby Davis in Supp. of Opp'n (Docket No. 112-2) ¶ 9.

8
Case No.: 5:11-CV-01338
ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION

does not currently market or sell any product containing those serial numbers.[44] Furthermore, during Broz's cross-examination, Broz testified that he has not personally talked with any single customer who told him that it was confused about Gel-Pak products having perhaps been made by ITS Nevada or vice versa or that it saw a Gel-Pak product and thought it was an ITS product or vice versa.[45]

Although a district court may consider hearsay in deciding whether to issue a preliminary injunction,[46] the court remains free to give less weight to such evidence because it is less reliable. The only evidence offered by ITS Nevada that is not hearsay is the one Customer Declaration, and Davis's sworn testimony contradicts the Customer Declaration's central assertion. Based on this record, ITS Nevada has failed to show that in the absence of an injunction ITS Nevada will suffer irreparable harm by customer confusion, loss of goodwill, or loss of reputation.

Finally, ITS Nevada argues that it will suffer irreparable harm through the disclosure of its trade secrets. According to ITS Nevada, it has non-disclosure agreements with all its customers for whom it develops customized cleaning wafers and materials.[47] ITS Nevada takes additional steps as well to protect the confidentiality of its specifications, know-how, and expertise in developing these wafers,[48] and it is not possible to determine the exact techniques used in manufacturing by a physical examination or materials analysis.[49] ITS Nevada alleges that Delphon is inducing its customers to provide Delphon with these trade secret specifications.

ITS Nevada acknowledges that "Delphon has not broadcast ITS' data to third parties."[50] ITS Nevada argues, however, that irreparable harm will nevertheless result from the alleged trade

---

[44] Docket No. 112-2 ¶ 11-12.

[45] Docket No. 134 at 39.

[46] *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

[47] *See* Docket No. 131-4 ¶ 31.

[48] *See id.* ¶ 32.

[49] *See id.* ¶ 33.

[50] Mot. for Preliminary Injunction (Docket No. 130-1) at 11:18.

9
Case No.: 5:11-CV-01338
ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION

secret misappropriation because Delphon is using the trade secret data to manufacture cleaning wafers. ITS Nevada's most persuasive evidence in support of its argument is as follows:

- The Customer Declaration stating that Davis told him "that if [he] gave Gel-Pak the type of cleaning material used in [his company] which is manufactured by [ITS Nevada], Gel-Pak would manufacture the material to the ITS specification and sell it to [his company] for a much lower selling price of the ITS."[51]

- Humphrey represents that MJC told him that, in June 2011, Davis told him that Gel-Pack could make anything MJC wanted or was purchasing from ITS if MJC gave Gel-Pack his specification. As listed above, this customer refused to sign a declaration.[52]

- Humphrey also represents that, during 2011, another customer, Form Factor, told him that Form Factor had given its specification to Delphon and that Delphon had used it.[53] Humphrey did not ask this customer to provide a declaration.[54]

In rebuttal, Davis represents that Delphon has been doing business with Form Factor since before the distribution agreement was entered into with ITS California.[55] At Form Factor's request, Delphon delivered samples of cleaning wafers to Form Factor for testing in March 2011.[56] In April 2011, Form Factor notified Davis that the wafers had qualified for use.[57] After the wafers qualified, Form Factor asked for a purchase specification for the product. Davis explained that the specifications typically come from the customer, as it is the customer who is buying.[58] Form Factor then provided Davis with a draft specification for Davis to review to ensure it accurately described

---

[51] Docket No. 131-5 ¶ 3.

[52] Docket No. 131-4 ¶ 35.

[53] *Id*. ¶ 39.

[54] Docket No. 134 at 56:10-13.

[55] *Id*. at 67:12-17.

[56] Docket No. 112-2 ¶ 13.

[57] *Id.* ¶ 14.

[58] *Id*. at ¶ 14.

10
Case No.: 5:11-CV-01338
ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION

the Delphon cleaning wafer. Davis "did not request any 'ITS specifications,' nor would any ITS product information be useful in drafting purchase specifications for Delphon products."[59]

Again, with the exception of the Customer Declaration, ITS Nevada offers only hearsay evidence. Additionally, Humphrey's testimony regarding Form Factor fails to establish that Delphon requested the ITS specification, used the ITS specification, or had the ITS specification prior to creating its own qualifying product. The Customer Declaration also fails to establish that Delphon asked for the trade secret specification; rather, it states that Delphon asked for the product itself. ITS Nevada has not offered any persuasive evidence that Delphon has or intends to use any of ITS' data or specifications to make cleaning materials.

For the reasons above, ITS Nevada has failed to show it is likely to suffer irreparable harm in the absence of preliminary injunction.

**C. LIKELIHOOD OF SUCCESS**

ITS Nevada also has failed to show likelihood of success on the merits for any of the causes of action that could give rise to non-monetary damages. As discussed above, ITS Nevada's evidence that Delphon has induced any customer to provide it with a trade secret ITS specification or actually obtained an ITS specification is unpersuasive. Additionally, the court has already discussed the lack of persuasive evidence that Delphon has made false representations to ITS Nevada's customers or otherwise unlawfully interfered with ITS Nevada's relationships. This lack of evidence is fatal to ITS Nevada's showing of likelihood of success on its trade secret, tortuous interference, and Lanham Act allegations. ITS Nevada's likelihood of success on its breach of contract claim, trademark infringement claim, and copyright claim, however, warrants a more thorough discussion.

In particular, ITS Nevada also has failed to show that it is likely to succeed on its claim that Delphon breached the distribution agreement by making sales in Europe in April 2000 and in Asia in 2002. ITS Nevada has not shown that these sales amounted to more than the incidental sales

---

[59] *Id* at ¶ 15.

permitted under the distribution agreement.[60]  Additionally, ITS Nevada argues that Delphon's conduct from 2007 onward breached the contract by making sales, promoting its cleaning materials in violation of the non-compete clause, and sharing confidential information with a competing sales distributor. ITS Nevada, however, has failed to show that it performed under the contract or that its performance was excused such that it can succeed on a breach of contract claim.[61] Under the distribution agreement ITS Nevada was required to solicit orders and aggressively promote the products it developed with Gel-Pak and to pay royalties on those sales to Gel-Pak.[62]  ITS Nevada admits that it found a different manufacturer in November 2000.[63] Additionally, in 2008, Davis learned that ITS Nevada was selling probe cleaning products in Asia but not paying royalties on those sales to Delphon.[64] ITS Nevada has not provided sufficient evidence to show that its performance under the contract was prevented by Gel-Pak's inability to provide a quality product and to secure raw materials and consistent lateness with product delivery.[65]

---

[60] *See* Docket No. 101-5, Section 3.7 ("both parties recognize the incidental sales may occur without [Gel-Pak's] knowledge").

[61] One of the essential elements of a breach of contract claim is "plaintiff's performance or excuse for nonperformance." *Hamilton v. Greenwich Investors XXVI, LLC*, 195 Cal. App. 4th 1602, 1614 (App. Ct. 2011).

[62] *See* Docket No. 101-5, Sections 2, 8.

[63] *See* Decl. of Billie Joyce Adams (Docket No. 131-3) ¶ 18.

[64] Docket No. 134 at 71:19-23.

[65] Another problem with ITS Nevada's likelihood to succeed on its breach on its contract claim is its 2009 letter informing Delphon that ITS Nevada is not a party to the distribution agreement between ITS California and Delphon, that ITS California is dissolved, and that ITS Nevada is not related to ITS California. *See* Docket No. 112-1 Ex. B. ITS Nevada now argues that ITS California assigned its contractual rights to ITS Nevada. *See* Docket No. 41:16-42:4. Section 14.2 of the distribution agreement states that the rights granted in the agreement may not be assigned or transferred without the written consent of the other party, and any attempted transfer without such consent shall be void, with the exception that either party may assign the agreement pursuant to a sale of the party's entire business relating to the subject matter of the agreement upon an undertaking by that assignee, in writing, to be bound by all of the obligations of the distribution agreement. *See* Docket No. 101-5. ITS Nevada has not provided any writings to reflect a written communication from ITS California or from ITS Nevada to Delphon about the transfer of rights under the contract. *See* Docket No. 134 at 60:14-61:13.

12
Case No.: 5:11-CV-01338
ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION

ITS Nevada also has failed to show that it is likely to succeed on its trademark infringement claim regarding use of the 7003 and 9903 numbers and product names. ITS Nevada has submitted no evidence that would contradict Davis's representation that, although Delphon provided product samples with the 7003 and 9903 part number designations to a few customers, Delphon has stopped that practice and does not currently market or sell any product containing those serial numbers.[66] Similarly, ITS Nevada's argument that Delphon "utilized Google search engine optimization tools to redirect sales of test products from [ITS Nevada's] website to Delphon and CPS's websites using ITS trademarked product numbers 7003 and 9903"[67] fails because it is vague as to what Delphon has allegedly done or whether the conduct is ongoing and because it is completely unsupported by evidence.

ITS Nevada also alleges that the name of Delphon's product, "ProbeMax" is confusingly similar to ITS Nevada's trademarks on Probe Clean, Probe Polish, Probe Form, Probe Lap, and Probe Scrub. The test for "likelihood of confusion is whether a 'reasonably prudent consumer' in the market place is likely to be confused as to the origin of the product or service at issue."[68] The Ninth Circuit has developed an eight-factor test "intended to guide the court in assessing the basic question of likelihood of confusion."[69] These factors, as applied to this case are: (1) the strength of ITS Nevada's trademarks; (2) the similarity of the marks; (3) the proximity or relatedness of the goods or services; (4) Delphon's intent in selecting the marks; (5) evidence of actual confusion; (6) the marketing channels used; (7) the likelihood of expansion of product lines; and (8) the degree of care consumers are likely to exercise.

Regarding the strength of the marks, ITS Nevada has not shown that it has a claim to the exclusive right to the word "probe" in connection with products in the probe cleaning industry. In fact, in both its Probe Form and Probe Lap trademark registrations, the USPTO required that ITS

---

[66] Docket No. 112-2 ¶ 11-12.

[67] Docket No. 131-1 at 19:8-11.

[68] *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002) (citations omitted).

[69] *Id.* (citing *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992)).

13
Case No.: 5:11-CV-01338
ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION

1    Nevada disclaim the use of the word "probe" apart from the mark as approved.[70]  Additionally, the

2    names Probe Clean, Probe Polish, and Probe Scrub describe what the product does to the probe,

3    and ITS Nevada has not shown that these marks are anything more than descriptive marks that lack

4    secondary meaning.[71]  The similarity between the marks is limited to being two words beginning

5    with the word "probe."  In light of the descriptive nature of the word "probe" to materials that clean

6    probes, ITS Nevada has failed to show Delphon chose this name to confuse or deceive customers.

7    Finally, ITS Nevada has not submitted evidence of actual confusion caused by the marks.  ITS

8    Nevada therefore has failed to show it is likely to succeed on its trademark infringement claims.

9        A more general problem with ITS Nevada's showing of likelihood of success is that ITS

10   Nevada has failed to show that the disputed trade secrets and trademarks are not jointly-owned by

11   Delphon pursuant to Section 7.2 of the contract.  Section 7.2 provides that

> "In the event that any intellectual property is developed under this Agreement in the course of developing the New Products, said developed intellectual property shall be jointly owned . . . . Should the developed intellectual property be owned solely by [ITS California], [ITS California] agrees to grant [Gel-Pak] a non-exclusive license in all fields of use. Should the developed intellectual property be jointly owned by [ITS California] and [Gel-Pak], [ITS California] and [Gel-Pak] agree to grant each other a non-exclusive license in all fields of use. Said license to intellectual property developed during the course of developing the New Products shall be perpetual beyond the termination of this Agreement."[72]

     ITS Nevada has not presented evidence sufficient to support its argument that Delphon

rejected the opportunity to work with ITS Nevada on the current version of Probe Polish and that

Delphon therefore has no rights to the related trade secret specifications and trademarks.[73]  This

problem is particularly damaging to ITS Nevada's argument regarding its trademarks on its product

names because Probe Clean is listed as an "Existing Product" owned by Delphon in the distribution

---

[70] *See* Motion Exs. 39-40.

[71] *See Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 873 (9th Cir. 2002) (explaining that a descriptive mark is not protectable unless the name has acquired secondary meaning).

[72] Docket No. 101-5, Section 7.2.

[73] Docket No. 134 at 63:14-64:8, 107:16-18.

14
Case No.: 5:11-CV-01338
ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION

agreement[74] and Probe Polish and Probe Scrub are listed as jointly-developed "New Products" under the agreement.[75] Without establishing that Delphon lacks ownership rights to this intellectual property, ITS Nevada has failed to show it can succeed on its claim against Delphon for using this intellectual property.

ITS Nevada also has failed to show that it is likely to succeed on its copyright infringement claim.[76] ITS Nevada argues that Delphon and CPS copied its technical bulletins. In order to establish a claim of copyright infringement, "a plaintiff must show that he or she owns the copyright and that defendant copied protected elements of the work. Copying may be established by showing that the infringer had access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements."[77] The degree of substantial similarity required to show infringement varies according to the type of work and the ideas expressed in it.[78] ITS Nevada correctly argues that original selection, arrangement, and expression of otherwise uncopyrightable components may be protectable.[79] But authors of factual or functional works often have only a narrow range of expression from which to choose in expressing their ideas.[80]

---

[74] *See* Docket No. 101-5 at 1, 9.

[75] *See id*. at 2 and 9.

[76] Even if ITS Nevada had shown a likelihood of success on its copyright claim, its request for an injunction would still be denied for failure to show irreparable harm. The Ninth Circuit recently held that its long-standing precedent finding a movant entitled to a presumption of irreparable harm on a showing of likelihood of success on the merits of a copyright infringement claim had been overruled. Accordingly, a movant must demonstrate a likelihood of irreparable harm as a prerequisite for injunctive relief in copyright cases. *See Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 10-35987, 2011 WL 3659315, at *9 (9th Cir. Aug. 22, 2011); *see also Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976 (9th Cir. 2011) ("propriety of injunctive relief in cases arising under the Copyright Act must be evaluated on a case-by-case basis in accord with traditional equitable principles and without the aid of presumptions or a "thumb on the scale" in favor of issuing such relief.").

[77] *Cavalier v. Random House, Inc*., 297 F.3d 815, 822 (9th Cir. 2002) (internal citations omitted).

[78] *See Reed v. Peterson*, C04-00228 WWS, 2005 WL 1522187, at *3 (N.D. Cal. June 27, 2005 (citing *Landsberg v. Scrabble Crossword Game Players, Inc*., 736 F.2d 485, 488 (9th Cir. 1984)).

[79] *Id.* at *4 (citing *Apple Computer, Inc. v. Microsoft Corp*., 35 F.3d 1435, 1445 (9th Cir. 1994)).

[80] *Id.* at *3.

15
Case No.: 5:11-CV-01338
ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION

Because ITS Nevada's technical bulletin is a functional work that discusses many unprotectable facts and ideas, the work is entitled only to "thin" copyright protection, and ITS Nevada's infringement clam must rest on the copying of ITS Nevada's unique selection, arrangement, and expression of such facts and ideas.[81] The similarity of expression required before the bulletin will be deemed infringed therefore must amount to verbatim reproduction or very close paraphrasing.[82] The court has compared the two bulletins.[83] Although the language of the bulletins is similar, the court does not find that Delphon's work duplicates the copyrightable selection, arrangement, or manner in which the ideas are expressed in ITS Nevada's work.

ITS Nevada also argues that Delphon copied its pricing structure. Delphon did not have an opportunity to address this allegation in its opposition because ITS Nevada did not submit the price lists that are the basis for this claim until July 12, 2011, the day before the hearing. At the hearing, Broz testified that within the past few weeks he had created a comparison between the CPS catalog prices and ITS Nevada prices showing that the prices are within pennies or dollars. This comparison was submitted as Exhibit 2 to the July 12, 2011 declaration.[84]

A price list can be copyrightable subject matter if it contains sufficient originality.[85] For example, the Ninth Circuit found that the prices in a guide for collectible coins were protectable because the publisher arrived at his best estimate of the coins' value by weighing his research with

---

[81] *See id.* (citing *Apple Computer, Inc.*, 35 F.3d at 1446); *see also*, *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904 (9th Cir. 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe.").

[82] *Landsberg,* 736 F.2d at 488 ("[A]uthors wishing to express the ideas contained in a factual work often can choose from only a narrow range of expression. . . . Therefore, similarity of expression may have to amount to verbatim reproduction or very close paraphrasing before a factual work will be deemed infringed.").

[83] ITS Nevada also claims copyright infringement on the basis of the similarity between its price list and Delphon and CPS's price list. ITS Nevada did not submit these price lists to the court until the day before the hearing. ITS Nevada's motion to submit that late-filed supplemental declaration has been denied. The court therefore does not consider the price lists contained in that submission.

[84] *See* Docket No. 134 at 33:9-18; Docket No. 133-3.

[85] *See CND Inc. v. Kapes*, 197 F.3d 1256, 1260 (9th Cir. 1999).

16
Case No.: 5:11-CV-01338
ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION

creativity and judgment. But here, ITS Nevada has not provided any evidence about how it determines its price matrix or whether that matrix incorporates any amount of creativity or originality. Furthermore, ITS Nevada has not presented any evidence to indicate that the similarity in price between its products and CPS's products is a result of copying rather than the consequence of a competitor selling a similar product in the same market. ITS Nevada has not established that its price list is protectable under copyright law or that Delphon copied those prices.

Accordingly, ITS Nevada has not established that it is likely to succeed on the merits.

**D. BALANCE OF EQUITIES AND PUBLIC INTEREST**

Beyond the court's conclusions that ITS Nevada has not established a likelihood of success on the merits and has not shown that it is likely to suffer irreparable harm in the absence of preliminary injunctive relief, the court is not persuaded that the balance of equities and the public interest tip in favor of granting a preliminary injunction. Although the parties presented little or no argument or evidence on these factors, it appears to the court the equities do not particularly tip in either party's favor. Additionally, as ITS Nevada has not shown that customers will be confused or deceived by Delphon's conduct, the court finds that the public interest weighs in favor of a marketplace with a greater number of competitors, and thus against the issuance of preliminary injunctive relief.[86]

### IV. CONCLUSION

ITS Nevada's motion for a preliminary injunction is DENIED.

**IT IS SO ORDERED.**

Dated: October 17, 2011

PAUL S. GREWAL
United States Magistrate Judge

---

[86] *See* Docket No. 131 at 1 (describing the requested injunction, including ITS Nevada's request "that Delphon be enjoined from competing against ITS in the Test Market.")

17
Case No.: 5:11-CV-01338
ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION