UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DELPHON INDUSTRIES, LLC,<br><br>                    Plaintiff,<br>        v.<br><br>INTERNATIONAL TEST SOLUTIONS, INC, ET AL., | Case No.: C 11-01338 PSG<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT AND COUNTERCLAIMANT INTERNATIONAL TEST SOLUTIONS, INC.'S MOTION TO COMPEL AND FOR PROTECTIVE ORDER**<br><br>**(Re: Docket No. 157)** |

Defendant and Counterclaimant International Test Solutions, Inc. ("ITS") moves to compel further disclosure of trade secrets pursuant to California Code of Civil Procedure Section 2019.210 and an interrogatory on the subject. ITS also seeks to compel a further deposition of Claudia Allison ("Allison") and a protective order against disclosure of its own trade secrets. Plaintiff Delphon Industries, LLC ("Delphon") opposes the motion. On January 3, 2012, the parties appeared for hearing. Having reviewed the papers and considered the arguments of counsel,

IT IS HEREBY ORDERED that ITS's motion to compel and for protective order is GRANTED-IN-PART and DENIED-IN-PART.

The background and history of this case are sufficiently presented in other court orders on the docket. The court therefore will focus on only those facts essential to the present dispute.

As part of its business, Delphon develops and manufactures gel products to allow for the safe

transport of delicate technology devices within, and between, laboratories. The gels themselves are polymers and are created using proprietary formulas that consist of precise mixtures, blends, and balances of specific chemical elements. In the first amended complaint, Delphon alleges a claim against ITS for trade secret misappropriation.

On June 24, 2011, Delphon served an interrogatory response identifying the trade secrets it claims were misappropriated, as including, but not being limited to, the following:

- manufactures and suppliers of chemistries, adhesives, films and laboratory equipment;
- composition of gel material, various varieties of similar gel or gel like materials, additives and fillers;
- technologies and techniques to modify gel chemistry;
- formulation or ratio of gel material and additives;
- blending, mixing or dispersion of gel material and additives and methods;
- filtering gel materials and additives;
- composition of compatible materials with gel material, including additives and layering materials;
- controlling reaction of gel material or processing parameters, cure temperatures and times;
- solvents which would/would not damage gel material;
- how to handle gel material in liquid and solid formats;
- utilizing materials(s) to clean gel material and easily remove materials from it
- method of application of the gel material, processes including equipment;
- adhesive technology and how to best employ PSA (pressure sensitive) adhesives with gel material or substrates;
- how to build and manufacture gel material in low and high volumes;
- how to coat gel material in low and high volumes (internal drawdown and external coating line);
- how to build and manufacture gel on silicon wafer through PSA adhesives and wet layout process;
- how to build and manufacture chemical clean, and utilize reservoir concept;
- how to create matte finish on gel material;
- specifications or target ranges of gel material and combinations thereof;
- modification of standard test methods (ASTM and the like) to make applicable to materials;
- lamination materials, techniques and processes;
- how to build vacuum release trays.

On November 23, 2011, Delphon revised its trade secret identification as follows:

Composition of Gel Material: Delphon customizes the composition of its gel materials to its customers' needs. Specifically, the properties of the gel, including the tackiness can be modified per customer requests. The varieties of Delphon gel materials (i.e., levels of tackiness) and the ingredients, additives or fillers to manufacture each type of Delphon gel are proprietary trade secrets.

Formulation of Gel Material: Delphon uses different ingredients from various suppliers to manufacture its gel materials. The "recipe" for its different gel materials – including the amount of each ingredient used, the process of combining the ingredients, the methods of combining the ingredients, the use of solvents with gel materials, and the blending, mixing

Case No.: C 11-1338 PSG 2
ORDER GRANTING-IN-PART ITS, INC.'S MOTION TO COMPEL

and dispersion of additives into the gel material – is proprietary trade secret information.

<u>Technology and Techniques Used in Manufacture of Gel Material:</u> In the process of manufacturing gel material, Delphon utilizes certain technologies and techniques to produce a gel product that suits the customers' needs.  These techniques relate to the filtering of gel materials and additives, the bonding of the gel material, method(s) of imparting surface treatments to the top and/or bottom surface of the gel material (matte finish or clear finish), the time and temperature(s) required to cure gel material, the layering of materials that compose the gel product, how to clean and post-clean the gel materials (including the substances, techniques and methods used to clean the gel), and the modification of standard test methods (i.e., ASTM) for use with the gel products.

<u>Application of Gel Material:</u> Delphon applies the gel manufactured pursuant to its proprietary formulas and techniques on various substances (including substrates and cleaning wafers) for its customers.  The process of applying the gel material to the substrate, cleaning wafer or other material requested by the customer, including the equipment used for the application of the gel material, the use of adhesives applied to gel material and substrates, the coating of materials with gel products and the lamination of materials for gel products is proprietary to Delphon.

<u>Manufacture of Gel Materials in Low/High Volumes:</u> Delphon can make a small amount (low volume) of sample of a gel product requested by a customer.  It also manufactures gel products in high volumes.  The process, technology, formulation and know-how required to manufacture a specific gel product at both high volumes and low volumes is proprietary to the company.

ITS complains that Delphon has not identified its trade secrets with reasonable particularity. Until Delphon does so, as it is obligated to do under Section 2019.210, further discovery is not warranted.

Delphon disputes that Section 2019.210 requires defining every minute detail of its trade secrets.  Because the composition and formulation of gel material, technology and techniques used in the manufacture of gel material, application of the gel material, and manufacture of gel materials in low and high volumes differ from customer to customer, the specific information that ITS seeks simply cannot be provided.  In support of this position, Delphon attaches the Allison deposition transcript in which Delphon's Director of Materials Technology explains that there is no single formulation of gel products because they are formulated based on customer need and customer specification, literally matched by the number of Delphon customers.  Beginning with a "core competency," Allison further explains that specific gel formulations are extended using different materials, combinations, ratios, and curing processes.  Delphon therefore contends that its trade secret designations are more than adequate and that ITS's motion to compel is merely an effort to

Case No.: C 11-1338 PSG   3
ORDER GRANTING-IN-PART ITS, INC.'S MOTION TO COMPEL

impede further discovery.

Section 2019 provides that "[i]n any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act [(UTSA)], before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity." The early identification of claimed trade secrets serves four purposes: (1) it promotes investigation of claims prior to suit and discourages the filing of meritless trade secret complaints; (2) it prevents plaintiff from using the discovery process as a means to obtain the defendant's trade secrets; (3) it frames the appropriate scope of discovery; and (4) it enables the defendant to form complete and well-reasoned defenses.[1] Courts have broad discretion in determining whether a plaintiff's disclosure satisfies Section 2019.210.[2]

"Trade secret identification does not require 'every minute detail' of the trade secret or the 'greatest degree of particularity possible.'"[3] "Nor does [S]ection 2019.210 envision a 'miniature trial on the merits of a misappropriation claim before discovery may commence.'"[4] "[W]here 'the alleged trade secrets consist of incremental variations on, or advances in the state of the art in a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field.'"[5] Indeed, "when the nature of the alleged trade secret or the technical field in which it arises makes a detailed description alone inadequate to permit the defendant to learn the limits of the secret and develop defenses or to permit the court to understand the secret and fashion discovery, the court may require an explanation of how the alleged trade secret differs from matters known to skilled persons in the

---

[1] *See Computer Economic, Inc. v. Gartner Group, Inc.,* 50 F.Supp.2d 980, 985 (S.D. Cal. 1999).

[2] *See Perlan Therapeutics, Inc. v. Super. Ct.,* 178 Cal.App.4th 1333, 1337, 101 Cal.Rptr.3d 211 (2009). California federal courts have long applied Section 2019, either under the *Erie* doctrine or simply as a case management tool. *See, e.g., Computer Economics, Inc. v. Gartner Group, Inc.,* 50 F.Supp.2d 980 (S.D. Cal. 1999); *Interserve, Inc. dba TechCrunch v. Fusion Garage, PTE., Ltd.,* Case No. 09-05812 JW (PVT), 2010 WL 1445553, at *3 (N.D. Cal. Apr. 9, 2010),

[3] *Id.* at 1346 (quoting *Advanced Modular Sputtering, Inc. v. Super. Ct.,* 132 Cal.App.4th 826, 830-31 (2005)).

[4] *Id.*

[5] *Id.*

Case No.: C 11-1338 PSG                 4
ORDER GRANTING-IN-PART ITS, INC.'S MOTION TO COMPEL

field as necessary to satisfy those needs."[6] Nevertheless, "[u]nder this flexible standard, absent a showing that the identification of the alleged trade secret alone lacks the particularity necessary to serve the statutory purposes, the trade secret claimant need not specify how the secret or its elements are distinguishable from matters known to skilled persons in the field."[7]

Despite Delphon's protestations that it cannot identify its gel formulations and compositions beyond what already has been provided, the undersigned is not convinced that it has complied with its obligations under Section 2019.210. In response to the interrogatory ITS propounded on Delphon seeking the disclosure of trade secrets, Delphon explicitly admits that its description of them is general. In fact, the description is so general that Delphon did not even bother to protect the description under the terms of the Stipulated Protective Order. Allison further conceded at her deposition that Delphon's trade secret disclosures were "conceptual" and that they lacked specific information identifying ingredient suppliers, recipe details such as amounts of ingredients, mixing ratios, curing steps and manufacturing process details. Allison's deposition testimony also confirmed that Delphon has this specific information at hand but simply has not produced it to ITS. Finally, Delphon offers no credible expert testimony suggesting that those in the field would be able to review Delphon's designations and distinguish the alleged trade secrets from information in the field.[8] The time for Delphon to refine its claims has long been at hand. Whatever Delphon wishes to claim as trade secrets that ITS misappropriated, it must identify each particular composition, formula, technology and manufacturing techniques, application and manufacture of gel materials without further delay.

Notwithstanding this conclusion, the court does not agree that further discovery of ITS should be stayed pending Delphon's amended trade secret disclosures. The court has extended the deadline for fact discovery once already and will not do so again.

---

[6] *Brescia v. Angelin,* 172 Cal.App.4th 133, 150 (2009).

[7] *Id.* at 149.

[8] *Cf. Advanced Modular Sputtering, Inc.,* 32 Cal.App.4th at 836 ("Where, as here, credible experts declare that they are capable of understanding the designation and of distinguishing the alleged trade secrets from information already known to persons in the field, the designation should, as a general rule, be considered adequate to permit discovery to commence").

Case No.: C 11-1338 PSG 5
ORDER GRANTING-IN-PART ITS, INC.'S MOTION TO COMPEL

1     No later than January 13, 2012, Delphon shall amend its trade secret disclosures in a manner consistent with this order.  No later than January 30, 2012, Allison shall appear for a further deposition, lasting no longer than three hours.

**IT IS SO ORDERED**.

Dated: 1/4/2011

                                            PAUL S. GREWAL
                                            United States Magistrate Judge